UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BUILDING TRADES EMPLOYERS' ASSOCIATION on behalf of THE NEW YORK PLAN FOR THE SETTLEMENT OF JURISDICTIONAL DISPUTES,<br><br>                          Plaintiff,<br><br>vs.<br><br>JOHN E. MARCHELL, in his official capacity as President of LOCAL UNION 3, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS and LOCAL UNION 3, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,<br><br>                          Defendants. | **COMPLAINT**<br><br>Civil Action Number: **08–CV–4564** (DLC)<br><br>**ECF CASE** |

The Complaint of Plaintiff, Building Trades Employers' Association ("BTEA") on behalf of The New York Plan for the Settlement of Jurisdictional Disputes ("New York Plan" or "Plan"), by its attorneys, Peckar & Abramson, P.C., respectfully alleges upon information and belief as follows:

**NATURE OF ACTION**

1.    This action is brought pursuant to § 301 of the Labor-Management Relations Act ("LMRA") of 1947, as amended, 29 U.S.C. § 185, the Federal Arbitration Act, 9 U.S.C. 9, et seq. and the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking an Order: (1) preliminarily and permanently enjoining Defendants John E. Marchell ("Marchell") in his official capacity as President of Local Union 3, International Brotherhood of Electrical Workers and Local Union 3, International Brotherhood of Electrical Workers Local 3 ("Local 3") (collectively

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

"Defendants") from proceeding with certain work in violation of the New York Plan's Decision dated February 26, 2008 (the "Decision"); (2) declaring that Defendants are bound and must abide by the New York Plan's Decision; and (3) confirming the Decision rendered by the New York Plan.

2.    With respect to the preliminary injunctive relief sought, Plaintiff seeks an Order prohibiting Defendants from continuing to violate the Decision of the New York Plan which holds that International Union of Elevator Constructors of New York and New Jersey, Local 1 ("Local 1") is entitled to work covering the modernization of sixty (60) elevators at Rego Park, New York, in an apartment complex more commonly known as Lefrak City (the "Lefrak City Project").

## JURISDICTION

3.    The New York Plan constitutes an agreement between an employer and a labor organization representing employees in an industry affecting commerce within the meaning of § 301(a) of the LMRA, 29 U.S.C. § 185(a).  Plaintiff also seeks to confirm the Decision of the New York Plan pursuant to the Federal Arbitration Act, 9 U.S.C. § 9.  This Court possesses jurisdiction over these disputes pursuant to 28 U.S.C. § 1331.

4.    Venue is proper in this District because the arbitration award was rendered in the County of New York within the State of New York.

## THE PARTIES

5.    The BTEA is located at 1430 Broadway, New York, New York.

6.    The BTEA is an association of employer associations whose members are engaged as building and construction contractors within New York City.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

2

7.      Defendant Marchell is President of Local 3 and his official offices are located at 158-11 Harry Van Arsdale Jr. Ave., Flushing, New York.

8.      Defendant Local 3 is a labor organization within the meaning of § 2(5) of the LMRA, 29 U.S.C. § 152(5) and its official offices are located at 158-11 Harry Van Arsdale Jr. Ave., Flushing, New York.

## STATEMENT OF FACTS

**A.      The New York Plan**

9.      The Building & Construction Trades Council of Greater New York ("BCTC") is an association of local building and construction trades unions that perform building and construction work within New York City.

10.     Beginning in 1903, the BTEA and the BCTC have been parties to an agreement known as the New York Plan which provides for the resolution of trade jurisdiction disputes between competing BCTC local unions. (A copy of the New York Plan is annexed hereto as Exhibit "A").

11.     The New York Plan was enacted to maintain labor harmony and to advance the efficiency of the building and construction industry by providing a forum to resolve jurisdictional disputes between trades unions by means of alternative dispute resolution procedures such as mediation and arbitration.

12.     Local unions are parties to, and bound by, the New York Plan by virtue of their membership in the BCTC and/or any other dispute resolution plan which recognizes the New York Plan as a forum for resolving disputes.

13.     BCTC local unions are also bound by the New York Plan by virtue of clauses in their collective bargaining agreements with employer contractors which require that

jurisdictional disputes be resolved through the New York Plan jurisdictional dispute resolution mechanisms.

14.    In this regard, Section III, paragraph 1 and Addendum "A" of the New York Plan requires that its members place the following language in their collective bargaining agreements:

> All jurisdictional disputes between or among building and construction trades unions and employers, that are parties to this CBA, shall be settled and adjusted according to the current plan established by the New York Plan for the Settlement of Jurisdictional Disputes, as amended from time to time. Decisions rendered by the New York Plan shall be final, binding and conclusive on the employer and the union parties to this agreement.

(See Exhibit "A" at pg. 4, paragraph 1).

15.    The BTEA is authorized to institute legal proceedings for the purpose of enforcing the New York Plan. The BTEA's authorization to institute legal proceedings includes enforcement of decisions rendered under the New York Plan, including the New York Plan's jurisdictional decisions, on behalf of the New York Plan and/or any members of the New York Plan.

16.    In this regard, Article VI, paragraph 4 of the New York Plan provides in pertinent part:

> Any violation of this Agreement by any entity bound hereto shall constitute a breach of the Agreement and such breach shall be subject to challenge by the BCTC and/or BTEA on Behalf of the Plan.

(See Exhibit "A" at pg. 14, paragraph 4).

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

4

**B.** **Local 3 and Local 1 Are Bound to the New York Plan**

17. Local 3 is a member of the New York Plan.

18. Local 1 is also a member of the New York Plan.

19. Local 1 and Local 3 are also members of the BCTC and bound to the New York Plan by virtue of said memberships.

20. As members of the New York Plan, both Local 1 and Local 3 are obligated to resolve jurisdictional disputes that arise between them in the New York City area, in the first instance, before the New York Plan.

**C.** **The Jurisdictional Dispute Between Local 3 and Local 1**

21. In or about February 2008, a jurisdictional dispute arose between Local 3 and Local 1, in the New York City area, over the issue of which union possesses jurisdiction to perform the elevator work at the Lefrak City Project.

22. This dispute arose after Local 3 began performing the relevant elevator work at the Lefrak City Project.

23. The matter was submitted to the New York Plan for the rendering of a decision pursuant to the provisions of the New York Plan.

24. Both Local 1 and Local 3 attended and participated in the arbitration.

25. In a decision dated February 26, 2008, the New York Plan determined that Local 1 had jurisdiction over the disputed elevator work at the Lefrak City Project. (A copy of the New York Plan's Decision is annexed hereto as Exhibit "B").

26. Despite the Decision of the New York Plan that jurisdiction over the disputed elevator work at the Lefrak City Project rested with Local 1, Local 3 continues to perform elevator work at the Lefrak City Project in violation of the New York Plan's decision.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

## FIRST CLAIM FOR RELIEF
### (PRELIMINARY INJUNCTION)

27.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 26 as if fully set forth herein.

28.     The New York Plan requires Local 3 to resolve jurisdictional disputes that arise between it and Local 1, in the New York City area.

29.     Although Local 3 and Local 1 were involved in a jurisdictional dispute over the Lefrak City Project, that dispute was resolved by virtue of the Decision of the New York Plan dated February 26, 2008 in which jurisdiction over said work was conferred upon Local 1 by the New York Plan.

30.     At some point prior to the New York Plan's February 28, 2008 Decision and continuing thereafter, Local 3 performed and continues to perform the disputed elevator work.

31.     Local 3's prior performance and continued performance of the disputed elevator work at the Lefrak City Project violates the Plan's February 26, 2008 Decision and the Plan itself, by which Local 3 is bound.

32.     Such violations of the New York Plan constitute a breach of the New York Plan and may be challenged by the BTEA on Behalf of the Plan.

33.     By reason of the aforesaid violations, Plaintiff has suffered, and continues to suffer, damages in that Local 3's continuing performance of the elevator work at the Lefrak City Project causes irreparable, material and grievous injury to the integrity of the New York Plan and its ability to render jurisdictional decisions. There is no adequate remedy at law to address these violations.

LAW OFFICES

**Peckar &**
**Abramson**
A Professional Corporation

6

34.    If Local 3 is not enjoined by this Court from continuing to violate the Decision of the New York Plan dated February 26, 2008 and ordered to cease from performing the disputed elevator work at the Lefrak City Project, the Plaintiff will continue to suffer, irreparable, material and grievous injury in that the New York Plan's ability to render enforceable decisions will be compromised.  There is no adequate remedy at law to address these violations.

## SECOND CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT)

35.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 34 as if fully set forth herein.

36.    Since there exists an agreement to arbitrate the jurisdictional dispute between Local 3 and Local 1 before to the New York Plan and a decision regarding the jurisdictional dispute has been rendered by the New York Plan, this Court must enter an Order declaring that Local 1 is entitled to the elevator work on the Lefrak City Project, that Local 3 is obligated to abide by the New York Plan's Decision dated February 26, 2008 and that Local 3 cease and desist from performing work at the Lefrak City Project.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

## THIRD CLAIM FOR RELIEF
## (CONFIRMATION OF THE NEW YORK PLAN'S DECISION)

37.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 37 as if fully set forth herein.

38.    Review of an arbitration award in a federal court is governed by the provisions of the Federal Arbitration Act, 9 U.S.C. § 9, et seq.

39.    The grounds for the New York Plan's Decision can be inferred from the facts of the dispute between Local 1 and Local 3 and the text of the New York Plan's Decision.

40.    The New York Plan's well-reasoned Decision is supported by the facts and law of this matter.

41.    Plaintiff therefore requests that the Court enter an Order confirming the New York Plan's February 26, 2008 Decision.

**WHEREFORE**, Plaintiff demands judgment against the Defendants:

(a)    Preliminarily and permanently enjoining Defendants from performing the disputed elevator work at the Lefrak City Project and the five boroughs of New York City.

(b)    Declaring that Local 1 has jurisdiction over the disputed elevator work at the Lefrak City Project, that Local 3 is not entitled to perform the elevator work pursuant to the New York Plan's February 26, 2008 Decision and that Local 3 must immediately cease and desist from performing any elevator work on the Lefrak City Project and the five boroughs of New York city pursuant to the New York Plan's February 26, 2008 Decision;

(c)    Confirming the Decision of the New York Plan dated February 26, 2008;

(d)    Awarding Plaintiff its attorneys' fees, disbursements and costs of suit;

(e)    Awarding Plaintiff costs and late fees associated with the New York Plan's proceedings and rendering of its Decision dated February 26, 2008.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

(f)    Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
      May 15, 2008

Respectfully submitted,
PECKAR & ABRAMSON, P.C.

By: _____

Gregory R. Begg (GB-0822)
Attorneys for Plaintiff Building Trades
Employers' Association on behalf of
The New York Plan for the Settlement
of Jurisdictional Disputes
41 Madison Avenue, 20th Floor
New York, New York 10010
(212) 382-0909

LAW OFFICES

**Peckar &
Abramson**

A Professional Corporation

# EXHIBIT A

08/11/2005  09:33    2127044367              BTEA                    PAGE  02/17

# The New York Plan

# For

# The Settlement of Jurisdictional Disputes

Revised December, 2004

# PREAMBLE

This agreement is entered into by and among the Building & Construction Trades Council of Greater New York (hereinafter "Trades Council") and on behalf of its constituent local unions, and the Building Trades Employers' Association ("BTEA") and on behalf of its members. *

Realizing the vital economic importance of maintaining harmony in the building and construction industry, and to preserve, revise and expand the predecessor plan, which had been in existence since 1903, as amended, for the resolution of jurisdictional disputes among the various trade unions affiliated with the TRADES COUNCIL, we, the authorized representatives of the TRADES COUNCIL and the BTEA hereby agree that the procedures outlined below shall govern all jurisdictional disputes between the trades affiliated with the TRADES COUNCIL, and all entities bound hereto and shall be known as the New York Plan for the Settlement of Jurisdictional Disputes (Herein "NEW YORK PLAN").

*All decisions rendered by the predecessor plan as published in the Handbook of the Building Trades Employers' Association are fully adopted and constitute the decisions of this revised plan.*

\* The BCTC and BTEA have sought the participation of the GCA in this Plan. The BCTC and BTEA have provided for the participation of the GCA and its signatory unions herein so that all parties and their affiliates would understand the proposed format for GCA participation in this Plan. However, unless executed by the GCA, all GCA references will be inapplicable

## Article I

## ADMINISTRATION

1.    The New York Plan shall be a joint effort between the TRADES COUNCIL and the BTEA.

2.    The New York Plan shall be jointly administered by the President of the Trades Council and the President of the BTEA, or their jointly selected designee.

3.    The BCTC and BTEA shall be responsible for processing cases of jurisdictional disputes when referred to the New York Plan in accordance with the procedural steps set forth herein.  The BCTC and BTEA shall establish procedures for the scheduling of mediations and arbitrations; administration of the arbitration program; issuance of Notices of Intent to Arbitrate and scheduling notices; publication of the Awards and Decisions of the Plan in the "Green Book"; and maintenance of records of the Plan, consistent with the Plan set forth herein.

## Article II

## APPLICABILITY

1.    The procedures and decisions emanating from this Plan shall apply to the following:

    a)    All unions affiliated with the TRADES COUNCIL, all unions affiliated with a District Council affiliated with the BCTC and all · District Councils in which any affiliate is a member; and all those that were previously affiliated at the time a jurisdictional dispute arose; and

    b)    Any employer that has executed an agreement to be bound by the procedures and decisions of this Plan; and

c)   Any employer, employer association or union that is party to a collective bargaining agreement providing for the settlement of jurisdictional disputes under the procedures and decisions of this Plan.

d)   All employers not covered under b and c, above and who are acting as subcontractors, general contractors, construction managers or project coordinators that have otherwise agreed to be bound by the Plan.

## Article III

## STIPULATION PROCEDURE

1.     The Trades Council agrees that it shall require its affiliated local unions to solicit at the earliest possible opportunity written agreement to the Plan by all employers in a collective bargaining relationship with such local and/or their employer associations.  The language to be included in affiliated unions' collective bargaining agreements is annexed hereto as Addendum "A".

2.     The BTEA, as well as employers and employer associations, general contractors, construction managers or project coordinators that are bound to the Plan, agree that subcontracted work shall be assigned in accordance with Green Book decisions or GCA decisions where applicable, as provided in Article V, Section 3 b), and (c), and they shall seek approval of the owners/developers to include in all bid documents at all levels that they or their contractors will only subcontract work or permit further subcontracting by its subcontractors, to employers who are, or become, bound to the Plan, and in the event they or their subcontractor wish to subcontract work to an employer that is not currently bound to the Plan, they shall solicit the subcontractors' agreement to the Plan prior to awarding the subcontract

4

to the previously non-bound employer and they will take all steps necessary to implement this provision.    In all events work assignments made through subcontracting by entities bound to this Plan shall be in accordance with this paragraph.

<u>Article IV</u>

<u>GENERAL PROVISIONS</u>

1.    All entities bound to this Plan, including but not limited to construction managers, project coordinators, general contractors and sub-contractors, shall make all work assignments to BCTC affiliates bound to this Plan and in accordance with the decisions of the Plan, Green Book and GCA decisions, where applicable.    If there are no applicable decisions, then in accordance with International agreements of record between the trades and/or their International Unions or local industry practice.

2.    When any entity bound to this Plan by any means makes an assignment of work he shall continue such assignment without alteration unless a change is agreed to between the contending local unions or it is directed to reassign the work in an official decision and award in accordance with this Plan.

3.    The unions bound to the Plan shall not engage in any strikes, work stoppages picketing or public demonstrations that may disrupt the worksite as a result of a jurisdictional dispute with another union bound by the Plan.

4.    It shall be the contractor's responsibility to coordinate the assignment of work in accordance with Plan decisions.

5.     The procedures of this plan may be invoked by a local union bound by this plan either at the time that the work is awarded to a contractor or at the time of assignment of the work to a particular trade by the contractor.   Under no circumstances shall the failure to contest an award of work to a contractor preclude a union from bringing a dispute to the plan later at the time of actual assignment of the work to a particular trade.

6.     An employer bound to this Plan that is directly responsible for the assignment of disputed work and that alleges there is a strike or impediment to job progress related to a jurisdictional dispute between trades bound to this Plan may submit the dispute to the Plan, by written notice to the President of the BCTC and BTEA President.  A strike shall have its common meaning in this context, which constitutes a withholding of labor specifically related to the alleged jurisdictional dispute.  Job impediments shall be defined as actions by the trades that actually and directly cause a delay in work on the particular job site that is the subject of the dispute.

(a)     The threshold issue in any such submission shall be whether there is in fact a strike or impediment to job progress and the burden of establishing the existence of such a strike or job impediment shall be upon the submitting employer.  Such threshold issue shall be submitted to one of the panel of four independent professional arbitrators described below in Article V, Section 3(b) & (d), for this initial determination.  The costs associated with the initial submission, as well as the further processing of the case under Article V if necessary shall be born by the submitting employer.

(b)     In the event there is a determination by the arbitrator that there is no strike or impediment to job progress, the employer's submission shall be dismissed.

(c)    In the event the arbitrator determines that there is in fact a strike or impediment to job progress the dispute shall be submitted for resolution in accordance with Article V herein.

(d)    Submissions by contractors under this section shall proceed immediately to mediation pursuant to Article V below. If the mediation produces no resolution, the contractor may submit the matter for arbitration, in writing to the BTEA, within 48 hours of the conclusion of the mediation. The arbitration shall be conducted in accordance with Article V below.

<u>Article V</u>

<u>RESOLUTION OF JURISDICTIONAL DISPUTES</u>

1.    **<u>STEP ONE - DIRECT RESOLUTION</u>**

a)    Whenever a dispute arises over an assignment of work on a jobsite, the trade objecting to the assignment ("challenging trade") shall, by its business manager, request a meeting with the business manager, of the trade in possession of the work assignment ("trade in possession"). The purpose of said meeting is to make all reasonable efforts to resolve the dispute directly between the trades. Said meeting shall be conducted within two (2) business days of the request. In the event that a meeting cannot be arranged within the said 2 days, a telephone conference should be arranged within the same said 2 days.

If the challenging trade does not proceed with a mediation request with in ten (10) business days of the dispute then the challenge shall be deemed abandoned for that job.

b)    In the event there are Green Book decisions, or GCA jurisdictional decisions where applicable or International Agreements of record between the trades, the trade relying thereon shall immediately provide the citation for such reliance to the contending trades.

c)    Simultaneously with the request for a meeting as provided for in subparagraph (a), the challenging trade shall provide notice of the dispute to the Trades Council. Said notice shall contain the name, address and phone number of the challenging trade, trade-in-possession, and employer, as well as the jobsite location, and any citation of applicable Green Book decisions, or agreements of record between trades.

2.    **STEP TWO-MEDIATION**

a)    In the event the representatives of the trades involved in the dispute are unable, for any reason, to resolve the matter within said 2 day period, the challenging trade may submit the dispute to the Plan for mediation.  Said submission shall be by either telephonic or written communication to the Trades Council, with simultaneous notice provided to the trade in possession.

b)    Mediation shall be conducted within seven (7) business days of the date of the submission.  The Trades Council shall notify the contending unions of the date, time and location of the mediation.  Said notice shall be by telegraphic, fax or overnight written communication to the parties to the dispute.

c)    The contending trades may jointly request an extension of this seven (7) day period.   However, such extensions will only be granted under the following circumstances:

(I) the request is jointly made; and
(II) the reason for the request is that the contending trades have a good faith intent and belief that they may be able to directly resolve the matter with additional time; and
(III) no prior extensions have been granted

d)    If the mediation involves unions signatory to a collective bargaining agreement with the GCA, the Director of Labor Relations of the GCA shall conduct the mediation with the President of the Trades Council or if one union is signatory to a CBA with a BTEA affiliate other than the GCA and one union is signatory to a CBA with GCA then the mediation shall be conducted by the President of the BTEA, the Director of Labor Relations for the GCA and the President of the Trades Council.

e)    The mediators shall make every effort to have the contending unions voluntarily comply with Green Book decisions, GCA jurisdictional decisions, International agreements of record between trades, where applicable.   Where no decision or agreement is applicable, the mediators shall assist the contending trades to resolve the matter by agreement consistent with the purposes and policies of the Plan.

(f).    In the event the mediators conclude that the dispute is governed by a Green Book decision of record, or GCA decision where appropriate, the mediators shall reduce such conclusion to writing setting forth the reasons for the conclusion.    Either union is free to submit the mediators' written conclusion into evidence at an arbitration hearing

## 3.    STEP THREE - ARBITRATION

(a) If the dispute is not resolved through mediation, the challenging trade may submit the matter for arbitration within seven (7) business days of the date of mediation, by written communication to the BTEA.    Simultaneously therewith, Notice of Intent to Arbitrate shall be served by the submitting union by telegram, facsimile transmission, overnight mail or hand delivery, with proof of said service, or where time permits, by certified mail return receipt requested.    Said Notice of Intent to Arbitrate ("Notice of Intent") shall identify the nature and location of the dispute to be determined in arbitration.    The BTEA shall then cause a Notice of Arbitration Hearing to issue.    Said Notice shall be sent by telegram, fax transmission, overnight mail or hand delivery, with proof of service thereof, so as to expedite notice to the contending trades.    The Notice of Arbitration Hearing shall set forth the hearing date, time and location, and the nature of the dispute to be heard. The cost of the arbitrator shall be born by the contractor responsible for the contract that governs the assignment of the work in dispute, and the cost of the transcripts of the hearing shall be born equally by the contending trades.

(b) The arbitration will be conducted by an arbitration panel of five (5). The panel shall consist of one independent professional arbitrator, one panel member designated by each of the contending unions that are contractor members of the BTEA and two panel members designated by the BTEA President, none of whom shall be directly or indirectly affected by the particular dispute.    The failure or refusal of a contending union to designate a panel member shall not prevent the arbitration hearing from going forward.

(c) The Chairperson of the arbitration panel shall be the independent professional arbitrator selected on a rotating basis, subject to availability, from a standing panel of four (4) professional arbitrators chosen by the BCTC and BTEA.

(d) The two members of the panel selected by the BTEA President shall be selected on a rotating basis from a standing panel of 10 BTEA contractor members that have been previously identified and submitted to the BCTC.

1. In the event the dispute involves locals signatory to collective bargaining agreements with BTEA affiliates that are not GCA members, then the two trades involved in the dispute shall each select one member of the arbitration panel for a total of two, and two members shall be selected by the BTEA President from non- GCA members of the BTEA pursuant to paragraph (b) and (d) above.

2. In the event the dispute involves locals signatory to CBAs with GCA affiliates only, the two trades involved in the dispute shall each select one member of the arbitration panel for a total of two, and two members shall be selected by the BTEA President, on a rotating basis, from a standing list of GCA members exclusively, and the decisions of the GCA shall govern and shall continue to have whatever precedential effect the GCA has applied to those decisions in the past, and

3. In the event that the dispute involves a union in a contractual relationship with the GCA ("GCA trade") and a union not in a contractual relationship with the GCA ("non-GCA trade"), hereinafter referred to as "mixed claims", then the two trades involved in the dispute shall each select one panel member and the BTEA President shall select one contractor representative from the list of non-GCA BTEA members and one from the list of GCA members.

4. In the event that there is a dispute as to whether a dispute involves "mixed claims", the panel shall be convened as set forth above in paragraph 3 and the Chairperson of the panel shall determine this threshold issue at the commencement of the arbitration hearing. The Chairperson shall be bound by the same criteria for determining this issue as for the ultimate determination of the assignment as set forth below at subsection (i). In the event the arbitrator determines the claim is mixed in nature and the panel is properly convened as a mixed panel the hearing shall proceed immediately. In the event the arbitrator determines the dispute is not mixed in nature the arbitrator shall determine the proper composition of the panel consistent

with subsections 1 through 3 above and the BTEA President shall convene a new panel as soon thereafter as possible.

5.    In "mixed claim" cases New York Plan Green book decisions and GCA decisions may be submitted by the contending trades for consideration by the arbitration panel in support of their claims for the work until such time as the New York Plan develops an addendum to the Green book on "mixed claims" that will develop from the "mixed claim" cases submitted on or after the execution and adoption of this agreement.

(e)    The arbitration hearing shall be conducted within fourteen (14) business days of the request for arbitration, except where an extension of time is necessary and reasonable to be determined by the President of the BTEA.  The hearing shall be stenographically recorded.  The Transcript of said hearing shall be made available upon request to any and all parties to the dispute.  The BTEA may, in its discretion, determine a reasonable and customary charge for copying the transcript.

(f)    The panel, the parties and witnesses shall be the sole participants in the arbitration hearing. The parties shall not be represented by counsel in the hearing.

(g)    A failure of any party to appear after due notice has been given, without good cause as determined by the arbitration panel, shall not prevent the hearing from going forth.

(h)    The contending trades shall have the right to present any National or New York Green Book Decisions and/or other pertinent information, as well as evidence and witnesses in support of their claims including, but not limited to, any documents and drawings, in support of their claim for the work.

(i)    The arbitration panel shall be bound by National or International Agreements of record between the trades, New York Green Book decisions, or GCA decisions where applicable, or where there are none, the recognized and established prevailing practice in the greater metropolitan area, unless the prevailing practice is contrary to a  New York Green Book decision and was improperly obtained through raiding or undercutting of wages, or vertical agreements. Where the prevailing practice is improperly obtained, the arbitration panel will rely on the New York Green Book decision rather than the improperly obtained prevailing practice.  Only if none of the above criteria is found to exist or apply to the dispute, the arbitration panel may consider the interests of the consumer and/or past practices of the employer and/or technological advances.

(j)    The four BTEA members of the panel shall participate in deliberations with the Chairperson of the arbitration panel. These deliberations shall occur immediately upon close of the hearing. The deliberations shall be closed to all other participants. The dispute shall be determined based on the totality of evidence submitted at hearing.

Each panel member shall have one vote, except that the Chairperson shall vote only in the event of a tie vote by the four BTEA panel members. The vote of each panel member shall be held in the strictest confidence and shall not be revealed in the panel's decision and award. The Chairperson shall render the panel's decision immediately after the close of the arbitration hearing and deliberations of the panel. Said decision shall be reduced to writing by the Chairperson and served upon all parties, and is final and binding on the parties to the dispute. The Chairperson shall set forth the basis for the decision and shall explain the panel's findings regarding the applicability of the above criteria.

(k)    In the event that a reassignment of the work is necessitated by the award, the Chairperson shall retain jurisdiction over the matter to resolve any issues that arise as a result of the transition of work assignment. Said transition shall take place within a reasonable time period, but in no event later than 5 working days from the decision. Said retention of jurisdiction shall not render the arbitration decision non-final or non-binding. If a reassignment of work is necessitated by said award the trade receiving the work shall not be entitled to any back pay and/or fringes for work done by the other trade prior to the reassignment. Failure of a trade to surrender the work, or a contractor, construction and/or project manager to reassign the work, in accordance with an arbitration decision shall constitute a breach of this agreement and may warrant enforcement through injunctive relief.

(l) The decisions and awards rendered pursuant to an arbitration hearing are final and binding and shall thereafter govern the awarding of work of the kind in question on all future jobs and shall be binding on all those bound to this Plan without regard to their participation in the underlying arbitration. Said decisions and awards are deemed addenda to the decisions printed in the Green Book until such time as the Green Book is updated and they are incorporated therein.

(m)    Following the issuance of the arbitration decision, the BTEA President will send a statement to the parties allocating the arbitrators fees and the transcript expenses in accordance with Article V(3)(a) above. Such statements shall be payable within ten (10) days of receipt. If payment is not received within thirty (30) days, a late fee of five hundred dollars ($500.00) will be assessed on the delinquent party. A future request by a delinquent

party to process a case will be held by the BTEA President until all outstanding fees and expenses, including any late fee, have been paid.

## Article VI

### ENFORCEMENT

1.      Any arbitration award shall be accepted and complied with within five (5) working days by all parties bound by this agreement.

2.      Arbitration awards issued as a result of New York Plan arbitration shall be enforced jointly and/or severally by the BCTC and /or BTEA on behalf of the Plan. The directly affected local unions shall have standing to join any confirmation proceeding commenced by the Plan and /or to enforce any award or decision absent enforcement proceedings commenced by the Plan.   Applications to confirm the Awards and decisions of the Plan, or any other enforcement proceeding, may be commenced in either federal or state court pursuant to the applicable arbitration statutes.  The prevailing party in these proceedings shall be entitled to reasonable costs and attorneys' fees.

3.      It shall be a violation of this Agreement for entities bound to this Plan, to enter into any agreement, resolution process, or stipulation that;

      *a)*      attempts to establish any jurisdiction which deviates from the spirit and intent of this Agreement, its procedures or  decisions of this Plan; or

      b)      permits jurisdictional disputes between affiliated locals to be resolved by a single craft arbitration process where all parties to the dispute are bound hereto and said dispute can be processed hereunder.

4.    Any violation of this Agreement by any entity bound hereto shall constitute a breach of the Agreement and such breach shall be subject to challenge by the BCTC and/or BTEA on behalf of the Plan. All parties bound to this agreement consent to the jurisdiction of the United States District Court for the appropriate District of New York pursuant to Section 301 of the Labor Management Relations Act (LMRA"). The parties to the underlying dispute shall also have standing to commence a Section 301 enforcement action in the absence of said action by the plan, or to join in any action commenced by the Plan. The prevailing party in any Section 301 litigation for enforcement shall be entitled to recover reasonable costs and attorneys fees from the losing party.

5.    Withdrawal from the TRADES COUNCIL, BTEA, or GCA shall not relieve any entity of its obligations under the Plan relating to jurisdictional disputes that arose, or Awards and Decisions that issued, during their tenure as affiliated entities.

### Article VII

#### EFFECTIVE DATE, DURATION

1.    This agreement was amended on _____, and shall be effective immediately upon execution by the BCTC, BTEA and GCA, and shall continue each year thereafter unless terminated as provided for below.

2.    If any signatory to this Agreement desires to change or terminate this Agreement it shall notify the other parties in writing at least ninety (90) days before the anniversary date of this Agreement. When notice to change or modify

the Agreement is given the proposed changes and/or modifications must be specified in the notice.

3.   This Agreement may be amended at any time by mutual agreement between the parties, reduced to writing and duly executed by all parties hereto.

IN WITNESS HEREOF, the parties have caused this Agreement to be executed and effective as of the date and year above written.

Dated :

Edward J. Malloy, President
Building & Construction Trades Council
Of Greater New York
71 West 23rd Street
New York, New York   10010
(212) 647-0700

Louis J. Coletti, President
Building Trades Employers' Association
Of the City of New York
44 West 28th Street
New York, New York   10001
(212) 481-0240

President
The General Contractors Association of New York
60 East 42nd Street
New York, New York 10165

## ADDENDUM "A"

## LANGUAGE FOR INCLUSION IN AFFILIATE'S COLLECTIVE BARGAINING AGREEMENTS

" All jurisdictional disputes between or among building and construction trades unions and employers, that are parties to this CBA, shall be settled and adjusted according to the current plan established by the New York Plan for the Settlement of Jurisdictional Disputes, as amended from time to time. Decisions rendered by the New York Plan shall be final, binding and conclusive on the employer and the union parties to this agreement."

**EXHIBIT B**

-----------------------------------------------------------------x

IN THE MATTER OF

ELEVATOR CONSTRUCTORS LOCAL UNION NO. 1

v.

ELECTRICAL WORKERS LOCAL UNION NO. 3

-----------------------------------------------------------------x

**DECISION**

BTEA
1430 Broadway
New York, New York

February 26, 2008
9:15 a.m.

B E F O R E :

    ALFRED D. LERNER, CHAIRMAN

    SAL CAPUTO

    STEVE KERRAKOS

    ROBERT ANSBRO

    KEVIN LYNCH

    MARLENE LEE, Hearing Reporter

I035504.1

MR. LEONARD LEGOTTE represents the INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS LOCAL NO. 1.

MR. RAYMOND A. MELVILLE represents the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS.

Neither side called a witness.

The scope of work involved in this hearing consists of the construction and modernization of 60 elevators at Rego Park, New York.

This hearing involves a dispute between Local 1, International Union of Elevator Constractors ("Local 1") and Local 3, International Brotherhood of Electrical Workers ("Local 3"). The dispute arises from work being performed within a large apartment complex in Queens, New York known as Lefrak City.

After determining that the elevators in the complex needed to be replaced, the owner contracted with Local 3 to perform the work which includes the removal of all existing elevator structures including the elevator wiring, elevator machinery and the installation of new elevator cabs and all other ancillary components.

Local 1 objects and contends that the extensive work mandates, under existing Rules of the new York Plan for the Settlement of Jurisdictional Disputes and various Green Book decisions, that this work must be awarded to Local 1.

The criteria set forth in the said Rules are as follows:

(a)  the arbitration panel shall be bound by National or International Agreements of record between the trades;

(b)  New York Green Book decisions or GCA decisions where applicable;

2

1035504.1

(c)  where no Green Book or GCA decisions are available, the prevailing practice may be utilized provided it is not contrary to a New York Green Book decision nor improperly arrived at through raiding, undercutting of wages or vertical agreements;

(d)  where the prevailing practice is improper for any of the above reasons, the panel must rely on the Green Book; and

(e)  if none of the above criteria exist nor are relevant to the dispute, the panel may then consider the interests of the consumer and/or past practices of the employer and/or technological advances.

Local 1 submitted the following Green Book decisions in support of its position:

101a -     Building Contractors and Mason Builders Association.
           Decision of Executive Committee, January 29, 1963.

112-3c -   Ornamental and Architectural Iron Workers v. Elevator Constructors
           Local 1.
           Decision of Executive Committee, January 15, 1971.

112d -     Carpenters' District Council v. Elevator Constructors, Local No. 1.
           Decision of Executive Committee, July 19, 1929.

112e -     In the Matter of Electrical Workers, Local No. 3 and the Elevator
           Constructors, Local No. 1.
           Decision of Executive Committee, October 28, 1932.

112f -     Elevator Constructors Union Local No. 1 v. International Brotherhood
           of Electrical Workers Local No. 3.
           Decision of Executive Committee, May 15, 1967.

112g -     Elevator Constructors Local Union 1 v. Electrical Workers Local
           Union 3.
           Decision of Executive Committee, March 21, 1969.

112-2g     Elevator Constructors Local Union No. 1 v. Electrical Workers Local
           Union 3.
           Decision of Executive Committee, December 17, 1969.

3

112-3g    Elevator Constructors Union Local No. 1 v. Electrical Workers Local
Union 3.
Decision of Executive Committee, May 23, 1973.

112-4g    Elevator Constructors Union Local 1 v. Electrical Workers Union
Local 3.
Decision of Executive Committee, April 21, 1976.

112-5g    Elevator Constructors Union Local 1 v. Electrical Workers Union
Local 3.
Decision of Executive Committee, July 27, 1976.

112-6g    Elevator Constructors Union Local 1 v. Electrical Workers Union,
Local 3.
Decision of Executive Committee, January 30, 1989.

112-7g    Elevator Constructors Union Local 1 v. Electrical Workers Union
Local No. 3.
Decision of Executive Committee, March 21, 1990.

Local 3 also tendered an exhibit containing what it contends are Established

Trade Practices and another setting forth Local 1 wages.  It also furnished the panel

with specifications concerning the modernization of 60 elevators at the properties

known as Lefrak City.

## DECISION OF THE PANEL

As to the criteria set forth in the aforementioned Rules:

(a)  The panel found there was no National or International Agreement between

the trades;

(b)  there were no national decisions of record submitted to the panel; and

(c)  the panel determined, after reviewing the aforesaid Green Book decisions,

that the following decisions are relevant:  112-e, 112-f, 112-g, 112-2g, 112-3g, 112-4g,

4

112-5g, 112-6g and 112-7g.  These decisions are supportive and controlling in regard to the assertions of Local 1.

Having considered all of the criteria and Green Book decisions and having determined the decisions to be controlling, it is not necessary to review the balance of the submissions.

The panel has, therefore, found in favor of the Elevator Constructors Local Union No. 1.

Alfred D. Lerner, Chairman

1035504.1