UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BUILDING TRADES EMPLOYERS' : CIVIL ACTION
ASSOCIATION on behalf of THE NEW :
YORK PLAN FOR THE SETTLEMENT : NO. 08-CIV-4564 (DLC)
OF JURISDICTIONAL DISPUTES, :
:
           Plaintiffs, :
:
vs. :
:
JOHN E. MARCHELL, in his official :
capacity as President of LOCAL UNION 3, :
INTERNATIONAL BROTHERHOOD OF :
ELECTRICAL WORKERS and LOCAL :
UNION 3, INTERNATIONAL :
BROTHERHOOD OF ELECTRICAL :
WORKERS, :
:
           Defendants. :

---

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
AND REQUEST FOR PRELIMINARY INJUNCTION
BY LOCAL 1, INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS**

**STATEMENT OF FACTS**

      Local 1, International Union of Elevator Constructions (hereinafter "Local 1") has moved to intervene as a Plaintiff in this case. Local 1 has set forth its grounds for intervention in its Motion to Intervene. Local 1 has also filed its proposed Complaint. Now in this Memorandum, Local 1 sets forth the reasons why it should be permitted to intervene and why a preliminary injunction should be issued against the Defendants in this action (hereafter referred to collectively as "Local 3").

Defendant Local 3 and Intervening Plaintiff Local 1 had a dispute over certain work being performed at Lefrak City, a large apartment complex in Queens, New York. The work involved the construction of sixty elevators. The owner of the apartment complex contracted with an employer employing members of Local 3 to perform the work. See page 2 of the Decision of the New York Plan for the Settlement of Jurisdictional Disputes, attached as Exhibit B to the Declaration of Gregory B. Begg, Esquire (hereafter "Begg Declaration"), which supports Plaintiff's Memorandum of Law in Support of Its Order to Show Cause and for a Preliminary Injunction Against Defendants (hereinafter "Plaintiff's Memorandum").

According to the Declaration of Leonard Legotte, which is attached to this Memorandum, Local 1 learned that the contract for the job at Lefrak City had been given to an employer employing members of Local 3. Legotte then initiated proceedings under the New York Plan for the Settlement of Jurisdictional Disputes (attached as Exhibit A to the Begg Declaration). The dispute was resolved by the Award of the work to Local 1 by a panel of arbitrators chaired by an Impartial Arbitrator (attached as Exhibit B to the Begg Declaration.)

Legotte's Declaration states that work began on the elevator job at Lefrak City in May, 2008. The work is expected to last for a year and is expected to employ ten two-person teams for the year. In defiance of the panel's Award, the work is being performed by members of Local 3, not by members of Local 1, at a time when Local 1 has approximately 135 members out of work, including approximately eighty-five mechanics and fifty apprentices most of whom can perform the type of work being performed at Lefrak City.

**LEGAL ARGUMENT**

    A.    **LOCAL 1 IS ENTITLED TO INTERVENE**

Local 1 is clearly entitled to intervene under Rule 24 of the Federal Rules of Civil Procedure. Local 1 is entitled to intervention as of right under 24(a) and to permissive intervention under Rule 24(b).

Permissive intervention is granted when an applicant's claim shares with the main action a common question of law or fact, provided that the intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.

Here Local 1 shares with the main action the essential fact of this matter: that the Arbitration Award of the New York Panel has not been complied with or observed. Local 1, like the Plaintiff, fears that the ability of the New York Plan to settle jurisdictional disputes will be gravely compromised if the Arbitration Award is not enforced by this Court.

Nor will the timely intervention of Local 1 in any way delay or prejudice the adjudication of the rights of the original party. To the contrary, the intervention of Local 1 reinforces and enhances the position of the original party by further demonstrating the irreparable harm that results from the defiance of an Arbitration Award of the New York Plan.

See <u>Ellender v. Schweiker</u>, 550 F. Supp. 1348 (S.D.N.Y. 1982), where Judge Cooper stated at page 1360:

> Since the proposed intervening plaintiffs present questions of fact and law virtually identical to those of the original plaintiffs, the application to intervene is granted in all respects. *See Swift v. Toia*, 450 F. Supp. 983 (S.D.N.Y. 1978), *aff'd, Swift v. Blum*, 598 F.2d 312 (2nd Cir. 1979), *cert. den., Blum v. Swift*, 444 U.S. 1025, 100 S. Ct. 687, 62 L.Ed.2d 658 (1980). Like the original plaintiffs, the intervenors are current OASDI recipients, former SSI beneficiaries, and subject to the Social Security Administration's debt recovery program. Their intervention will not detract from the original plaintiffs' case; actually it will add to the Court's understanding of the facts. Specifically, their intervention will in all likelihood illustrate several cases in which OASDI beneficiaries responded to the Social Security Administration notices by authorizing reductions in their benefits, and consequent monetary loss. *See Bass v. Richardson*, 338 F. Supp. 478, 492 (S.D.N.Y. 1971) (intervention granted where intervenors in position to inform court of relevant facts).

Permissive intervention has also been granted by this Court in <u>International Design Concepts, LLC v. Saks Incorporated</u>, 486 F. Supp. 2d 229, 234-235 (S.D.N.Y. 2007); <u>Degrafinreid v. Ricks</u>, 417 F. Supp. 2d 403, 407-408 (S.D.N.Y. 2006) and <u>New York v. Abraham</u>, 204 F.R.D. 62 (S.D.N.Y. 2001).

Local 1 also has the right to intervene as of right under Rule 24(a) which applies:

> (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The question that arises is whether Local 1's interest is or is not adequately represented by the Plaintiff. In the admittedly unlikely event that the Plaintiff does not make out the case for a preliminary injunction, Local 1, having suffered additional harm, will be better positioned to do so. (See Section C below). However, as Judge Castel in the International Design case, supra, said at pages 234-235:

> I conclude that even if Oscar were not a necessary party under Rule 19, permissive intervention is appropriate under Rule 24(b). Accordingly, I need not determine whether intervention as of right under Rule 24(a) is warranted. *See Gulf Underwriters Ins. Co. v. The Hurd Ins. Agency*, 2004 WL 2935794, *2 n. 3 (D. Conn. Dec. 16, 2004) (concluding that permissive intervention is appropriate and that the "more difficult question" of intervention under Rule 24(a) need not be reached); *State of New York v. Reilly*, 143 F.R.D. 487, 489 (N.D.N.Y. 1992) ("Having granted the [intervenors] motions for permissive intervention, there is no need for the court to decide whether or not these applicants are entitled to intervention of right pursuant to Rule 24(a)(2).").

**B.   PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION**

A party seeking a preliminary injunction "must show (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Zervos v. Verizon New York Inc., 252 F.3d 163, 172 (2d Cir. 2001).

Plaintiff, in its Memorandum supporting its request for a preliminary injunction has correctly stressed the irreparable harm that it will suffer if the decisions of the New York Plan can be ignored and defied as Local 3 has ignored and defied the decision against it underlying this case.

Plaintiff's Memorandum also stresses Plaintiff's likelihood of success on the merits in seeking the enforcement of an arbitral decision rendered under the New York Plan, of which both Local 3 and Local 1 are members, a decision rendered on the basis of numerous prior relevant decisions of the New York Plan.

We do not believe it is necessary to go into detail concerning the enforceability of arbitration awards issued under an agreement between an employer and a labor organization. The Court of Appeals for the Second Circuit has consistently upheld such awards holding that a court is not entitled to reexamine the merits of an award. International Brotherhood of Electrical Workers, Local 97 v. Niagara Mohawk Power Corporation, 143 F.3d 704 (2d Cir. 1998); Wackenhut Corporation v. Amalgamated Local 515, 126 F.3d 29 (2d Cir. 1997); Hygrade Operators, Inc. v. Local 333 United Marine Div., 945 F.2d 18 (2d Cir. 1991); Beth Israel Medical Center v. Local 1199 S.E.I.U., United Healthcare Workers East, 530 F. Supp. 2d 610 (S.D.N.Y. 2008).

Local 1 endorses the comments in Plaintiff's Memorandum about Plaintiff's entitlement to the preliminary injunction, and Local 1 agrees that a critically important issue in this case is

the necessity of preserving the integrity of the arbitration process provided for in the New York Plan.

### C. LOCAL 1'S ADDITIONAL ENTITLEMENT TO A PRELIMINARY INJUNCTION

Local 1's entitlement to the preliminary injunction coincides with the Plaintiff's entitlement insofar as Plaintiff seeks to insure the enforceability of the New York Plan's mechanism for deciding jurisdictional disputes.

Local 1 has an additional reason supporting its entitlement to a preliminary injunction. In at least two cases the Court of Appeals for the Second Circuit has found irreparable injury to a union whose members have been deprived of work. <u>Drywall Tapers and Pointers of Greater New York, Local 1974 v. Operative Plasterers' and Cement Masons' International Association of the United States and Canada</u>, 537 F.2d 669 (2d Cir. 1976), was an action by the Painters union against a Plasterers union under an agreement to resolve work disputes in the construction industry. The Court stated at page 675:

> Certainly there was sufficient evidence to support a finding of irreparable injury to Painters from their loss of employment opportunities, loss of bargained-for benefits (safety conditions, benefits and wages were being diminished under "sweetheart" contracts negotiated by Plasterers), and diminution of the Painters' ability to represent its members.

In the case of Local 553, <u>Transport Workers Union of America, AFL-CIO v. Eastern Air Lines</u>, 695 F.2d 668 (2d Cir. 1982), the union brought an action alleging that the airline had violated certain provisions of the Railway Labor Act. The Court stated at page 677:

> Under the assumption that Eastern wrongfully hired the Braniff flight attendants, the members of Local 553 would suffer two distinct harms while the two sides were awaiting the District Court's decision on the merits. First, the membership would lose the amount of additional wages that would have been paid to many union members if senior members had been awarded the South American flights. Although the approximate quantity of this loss could be calculated, the District Court concluded that "it will be exceedingly difficult, if not impossible, to determine the identity of the Union members injured by this violation and the degree of their injury." ….
>
> [W]e think it was within the District Court's discretion to find irreparable injury here because of the difficulty, as perceived at the time of the Court's ruling, of determining the identity of all the attendants who would suffer lost wages. (Footnote omitted).

The attached Declaration of Leonard Legotte establishes the very same kind of irreparable injury in the instant case. The Arbitration Award of the New York Plan ruled that the elevator work at Lefrak City must be performed by members of Local 1. Legotte's Declaration, in paragraph 7, estimates there would be work for twenty Local 1 members for a year. The Declaration, in paragraph 8, goes on to state that approximately one hundred thirty five members in the job titles that would be referred to the job are presently unemployed. However, Legotte goes on to declare, in paragraph 9, that, the identity of members who would have worked on the Lefrak City job cannot be determined at this time.

Thus, Local 1 has suffered irreparable harm of the kind found by the Court of Appeals for the Second Circuit in the two quoted cases, in addition to the irreparable harm suffered by the Plaintiffs.

**CONCLUSION**

Based on the foregoing reasons, Local 1 joins the Plaintiffs in submitting that this Court should issue a preliminary injunction enjoining Defendants from continuing to perform elevator work at the LeFrak City project.

          Respectfully submitted,

          MARKOWITZ & RICHMAN

          */s/ Richard H. Markowitz*
          RICHARD H. MARKOWITZ, ESQUIRE
          (RHM-5158)
          1100 North American Building
          121 South Broad Street
          Philadelphia, PA 19107
          (215) 875-3111
          (215) 790-0668 (Fax)

          Attorney for Local 1, International
          Union of Elevator Constructors

Dated: May 27, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BUILDING TRADES EMPLOYERS' ASSOCIATION on behalf of THE NEW YORK PLAN FOR THE SETTLEMENT OF JURISDICTIONAL DISPUTES,<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN E. MARCHELL, in his official capacity as President of LOCAL UNION 3, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS and LOCAL UNION 3, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 08-CIV-4564 (DLC)<br><br><br><br><br><br>**DECLARATION OF<br>LEONARD LEGOTTE** |

**LEONARD LEGOTTE** declares, pursuant to 28 U.S.C. §1746, the following:

1.      I am the President-Business Manager of Local 1, International Union of Elevator Constructors. I was elected to this office in June of 2007.

2.      I initiated the jurisdictional dispute involving the Lefrak City job at issue in this case when I learned that the contract for the elevator work had been given to an employer employing members of Local 3, International Brotherhood of Electrical Workers.

3.      I presented the case for Local 1 to the arbitration panel hearing the dispute under the New York Plan for the Settlement of Jurisdictional Disputes. Both Local 3 and Local 1 are members of the Building and Construction Trades Council of Greater New York. Both Local 3 and Local 1 are bound by the New York Plan.

4.      The arbitration panel awarded the work at Lefrak City to Local 1 on the basis of numerous precedents holding that the installation of new elevators is the work of Local 1.

5.      The Arbitration Award was issued on February 26, 2008. The award is attached as Exhibit B to the Declaration of Gregory R. Begg, Esquire.

6.      The elevator work at Lefrak City began earlier this month. The elevator work is being performed by members of Local 3, not by members of Local 1.

7.      My best estimate is that it will take approximately a year to install sixty elevators and will require the employment of ten two-person crews or twenty employees.

8.      In my Local Union, approximately 135 members are presently out of work. These unemployed members include approximately 85 mechanics and approximately 50 apprentices. These are the job titles of the employees who should right now be working at Lefrak City.

9.  It is not possible at this time to determine which members would have been referred by the Local Union to the Lefrak City job if the Arbitration Award had been adhered to.

## DECLARATION

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 5/22/08                              _____
                                                      LEONARD LEGOTTE

3