*Norman Rothfeld*
*Counselor at Law*

(212) 686-0070
FAX: (212) 481-9569

276 Fifth Avenue, New York, N.Y. 10001

August 18, 2008

Honorable Denise L. Cote
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, New York 10007

*Re: Building Trades Employers' etc. v. Marchell, Case No. 08 CIV 4564 (DLC)*
*Local 3's Reply to Plaintiff's Responses to Local 3's Submission*

Enclosed herewith is the NLRB's Decision and Determination of Dispute dated August 15, 2008, which awards the work in dispute to employees represented by Local 3, International Brotherhood of Electrical Workers, AFL-CIO. The Board called attention to the proceeding before this Court in footnote 6 of its Decision.

This Court should dismiss the Complaint based upon the Board's Decision and upon the applicable law set forth in this Court's Opinion and Order dated June 13, 2008, including *Carey v. Westinghouse*, 375 U.S. 261 at 272 (1964).

Respectfully Submitted,

Norman Rothfeld (NR: 9639)

cc: Gregory R. Begg, Esq. (via facsimile)
Richard Markowitz, Esq. (via facsimile)

NR/cm
S:\MISC\NYRA\Cotelrr8-18-08#2.wpd

NOTICE: This opinion is subject to formal revision before publication in the bound volumes of NLRB decisions. Readers are requested to notify the Executive Secretary, National Labor Relations Board, Washington, D.C. 20570, of any typographical or other formal errors so that corrections can be included in the bound volumes.

Local 3, International Brotherhood of Electrical Workers, AFL–CIO and Alliance Elevator Company, Inc d/b/a Unitec Elevator Company and Local 1, International Union of Elevator Constructors of New York and New Jersey. Case 29–CD–617

August 15, 2008

## DECISION AND DETERMINATION OF DISPUTE

BY CHAIRMAN SCHAUMBER AND MEMBER LIEBMAN

This is a jurisdictional dispute proceeding under Section 10(k) of the National Labor Relations Act (the Act). The Elevator Industries Association (EIA) filed a charge on May 27, 2008,[1] alleging that the Respondent, Local 3, International Brotherhood of Electrical Workers, AFL–CIO (Local 3), violated Section 8(b)(4)(D) of the Act by threatening to engage in proscribed activity with an object of forcing Unitec Elevator Company (Employer), a member of the EIA, not to reassign certain work from employees represented by Local 3 to employees represented by the International Union of Elevator Constructors of New York and New Jersey, Local 1 (Local 1). The hearing was held on June 17 and 18 before Hearing Officer Henry J. Powell. Thereafter, the EIA, the Employer, and Local 1 filed posthearing briefs.[2]

The National Labor Relations Board affirms the hearing officer's rulings, finding them free from prejudicial error. On the entire record, the Board makes the following findings.[3]

### I. JURISDICTION

The Employer is a Delaware corporation with its principal place of business in Long Island City, New York. During the past year, the Employer provided services valued in excess of $50,000 directly to entities located outside the State of New York. We find that the Employer is engaged in commerce within the meaning of Section 2(6) and (7) of the Act.[4] The parties stipulated, and we find, that Local 3 and Local 1 are labor organizations within the meaning of Section 2(5) of the Act.

### II. THE DISPUTE

#### A. Background and Facts of Dispute

The Employer is a wholly-owned subsidiary of United Technologies Corporation. The Employer is engaged in the business of maintenance, modernization, installation, and repair of elevators in existing buildings. As a member of the EIA, the Employer is party to a collective-bargaining agreement with Local 3, which represents its employees. The Employer does not have a collective-bargaining agreement with Local 1.

Since 2000, the Employer has maintained the 60 elevators at Lefrak City in Queens, New York, a residential apartment complex of 20 identical high-rise buildings, each with three elevators. In early 2008, the Employer was awarded the contract to replace elevator cars and motor works, and install a safety monitoring system in all 60 elevators.

The Employer has about 120 employees, represented by Local 3, who perform elevator work. Of the 120, about 50 specialize in modernization projects, and that group was assigned to the Lefrak City project. Work commenced in April, with four senior modernization employees tasked to remove an existing elevator and to develop a prototype to replace the remaining elevators. Once developed, the four employees would then work with 10 modernization teams (each consisting of two employees) to replace the balance of the Lefrak City elevators. The project entails replacing 2–3 elevators per month over the next 2 years.

Local 1 and the Elevator Manufacturer's Association of New York (EMANY) are parties to a collective-bargaining agreement that covers new construction and modernization work in existing buildings. The agreement incorporates the New York Plan for Settlement of Jurisdictional Disputes (the New York Plan), which establishes procedures for resolving jurisdictional disputes involving union members of the Building and Construction Trades Council (BTC) and employer members of the Building Trades Employer Association of New York (BTEA).

The EIA and the Employer are not members of the BTEA or EMANY and are not parties to the New York Plan. Otis Elevator Company, another subsidiary of

---

[1] Unless otherwise indicated, all dates refer to 2008.

[2] In lieu of filing a post-hearing brief, Local 3 made an oral argument at the end of the hearing.

[3] Effective midnight December 28, 2007, Members Liebman, Schaumber, Kirsanow, and Walsh delegated to Members Liebman, Schaumber, and Kirsanow, as a three-member group, all of the Board's powers in anticipation of the expiration of the terms of Members Kirsanow and Walsh on December 31, 2007. Pursuant to this delegation, Chairman Schaumber and Member Liebman constitute a quorum of the three-member group. As a quorum, they have the authority to issue decisions and orders in unfair labor practice and representation cases. See Sec. 3(b) of the Act.

[4] The EIA, the Employer, and Local 3 stipulated that the Employer met the Board's jurisdictional standards. Local 1 would not join the stipulation but later agreed that the Employer met the jurisdictional standards.

United Technologies Corporation, is a party to the EMANY contract and the New York Plan.

In February, Local 1 initiated a jurisdictional dispute proceeding under the New York Plan seeking assignment of work on the Lefrak City project to employees it represents. Local 1 and Local 3 participated in the subsequent arbitration hearing.[5] The Employer did not participate. On February 26, an arbitration panel issued a decision awarding the construction and modernization work at Lefrak City to Local 1. On March 11, Local 1 advised the Employer that the arbitration panel found "that the work involved in the construction or modernization of approximately sixty (60) elevators . . . [at] Lefrak City is work which belongs to, and should be performed by, employees represented by [Local 1]. Employees represented by [Local 3] are not permitted to perform the construction and modernization [work] . . . ."

At a meeting in February, Local 3's business manager, Robert Olenick, told the Employer's modernization manager, Michael Scotko, that Local 1 was going to claim the Lefrak City work and might "file for arbitration." Olenick also told Scotko: "[d]o not think about giving the work to Local 1. This is our work, you're not going to take it away. If you try to give it away, they'll [sic] be repercussions."

On May 21, Local 3 Shop Steward Giulio Flaim separately told Scotko and Dino Carbone, the Employer's president, that if the Employer decided to give the Lefrak City work to Local 1, Local 3 would strike and picket the Employer. About a week later, Scotko received two letters signed by a number of the Employer's Local 3-represented employees. The letters threatened that the employees would strike if the Employer gave the Lefrak City work to Local 1. The EIA then filed its charge with the Board in this proceeding.[6]

### B. Work in Dispute

The notice of hearing described the work in dispute as that "work being performed by employees of the Employer, in connection with modernizing existing elevators at Lefrak City, a multi-building residential housing complex located in Corona, Queens, New York, specifically, upgrading, replacing, and/or installing equipment and component parts in existing elevators to meet current code compliance."

The EIA, the Employer, and Local 3 stipulated to this description of the work in dispute. Local 1 disagreed with describing the work as "modernizing" and "upgrading" because the work entails, for the most part, installing entirely new equipment and, therefore, amounts to constructing a new elevator system.

According to the description of the work in dispute, both "replacing" and "installing" equipment are involved. The record shows that the new equipment will be installed into the existing elevator shafts and that the work does not require constructing any new entrances or new elevator shafts. Although the work largely involves installing new equipment, we find that the work in dispute is fairly described as "modernizing." *Elevator Constructors Local 1 (Elevator Industries Assn.)*, 229 NLRB 1200, 1201 (1977) (describing the disputed work as "modernization" of elevators that "entails the replacement of virtually all component parts of the elevators").

### C. Contentions of the Parties

The EIA, the Employer, and Local 3 contend that this Section 10(k) dispute is properly before the Board for determination. On the merits of the dispute, the EIA and Employer assert that the factors of certification and collective-bargaining agreements, employer current assignment and preference, past practice, area practice, relative skills and training, and economy and efficiency of operations favor awarding the disputed work to the employees represented by Local 3. They also rely on *Elevator Constructors Local 1*, supra, awarding similar elevator modernization work to employees represented by Local 3 over those represented by Local 1.

Local 1 does not agree that this jurisdictional dispute is properly before the Board for determination under Section 10(k). Local 1 contends that all the parties are bound to an agreed-upon method for voluntary adjustment of the dispute, the New York Plan, because the Employer is an "alter ego" of Otis Elevator Company. Local 1 also asserts that Local 3's threat to strike the Employer is a "sham" because Local 3 is subject to a no-strike clause that makes it unlikely that Local 3 had any intention of following through with its threat to strike or picket. Local 1 further contends that the timing of the specific strike threats, coming well after the arbitration award—and only after the BTEA sued to enforce that award—shows that they were made to "manufacture" a jurisdictional dispute to circumvent the arbitration award.

---

[5] Local 1 and Local 3 are members of BTC. Local 3 contends that Local 3 has different divisions and that only its construction division is a party to the New York Plan. Local 3's maintenance division, which represents the employees of the Employer, is not a party to the New York Plan. Local 3 asserted that it participated in the arbitration hearing to inform the arbitration panel that it did not have jurisdiction to decide this dispute because the Employer was not bound by the New York Plan.

[6] On May 15, the BTEA, on behalf of the New York Plan, filed an action in the United States District Court for the Southern District of New York to enforce the arbitration panel award. The court stayed the proceedings until August 2008 so that the NLRB could have "an opportunity to address the issues presented in this action." *Building Trades Employers' Association v. Marchell*, No. 08 Civ. 4564 (DLC), 2008 WL 2421634, *3 (S.D.N.Y., June 13, 2008).

ELECTRICAL WORKERS LOCAL 3 (UNITEC ELEVATOR CO.) 3

On the merits of the dispute, Local 1 contends that, with the exception of current assignment and employer preference, all factors favor awarding the disputed work to Local 1-represented employees, particularly area and industry practice. Finally, Local 1 argues that *Elevator Constructors Local 1*, supra, is not determinative.

### D. Applicability of the Statute

The Board may proceed with a determination of a dispute under Section 10(k) of the Act only if there is reasonable cause to believe that Section 8(b)(4)(D) has been violated. This standard requires finding that there is reasonable cause to believe that there are competing claims to the disputed work, and that a party has used proscribed means to enforce its claim to the work in dispute. Additionally, there must be a finding that the parties have not agreed on a method for the voluntary adjustment of the dispute. See, e.g., *Operating Engineers Local 150 (R&D Thiel)*, 345 NLRB 1137, 1139 (2005). We find that these requirements have been met.

#### 1. Competing claims for work

The parties do not deny that there are competing claims for the work in dispute. Local 3 has at all times claimed the work for the employees it represents, and these employees have been performing the work. Local 1 has claimed the work for employees it represents both in this case and in proceedings under the New York Plan.

#### 2. Use of proscribed means

The statements by Local 3 officials in mid-February and May, supported by the employees' letters in May, constitute threats to take proscribed coercive action in furtherance of a claim to the work in dispute. Although Local 1 urges the Board to find that these threats were a sham, there is no evidence that they were not made seriously or that Local 3 colluded with the Employer in this matter. *Lancaster Typographical Union No. 70 (C.J.S. Lancaster)*, 325 NLRB 449, 450–451 (1998) ("It is well established that as long as a Union's statement, on its face, constitutes a threat to take proscribed action, the Board will find reasonable cause to believe that the statute has been violated, in the absence of affirmative evidence that the threat was a sham or was the product of collusion."). Furthermore, the Board has rejected the argument that a strike threat was a sham simply because it would have violated a no-strike clause. See *Bricklayers (Cretex Construction Services)*, 343 NLRB 1030, 1032 fn. 5 (2004).

#### 3. No voluntary method for adjustment of dispute

The Employer is not signatory to any contract binding it to the New York Plan. Nonetheless, Local 1 contends that the Employer is subject to that agreement because of an alleged "alter ego" relationship with Otis Elevator Company, an entity admittedly party to the New York Plan.

The Board will find alter-ego status when two employers have "substantially identical" ownership, management, business purpose, nature of operations, equipment, customers, and supervision. *Crawford Door Sales*, 226 NLRB 1144 (1976). Local 1's evidence, however, shows, at best, only that Otis Elevator, like the Employer, is a wholly-owned subsidiary of United Technologies Corporation. Common ownership alone is insufficient to establish alter-ego status. *Electrical Workers IBEW Local 3 (Telecom Plus)*, 286 NLRB 235, 235 (1987), enfd. 861 F.2d 44 (2d Cir. 1988). Therefore, we find that the Employer is not an alter ego of Otis Elevator and is not bound by the terms of the New York Plan. Consequently, there is no agreed-upon method for the voluntary adjustment of this dispute.

Based on the foregoing, we find that there are competing claims for the disputed work, that there is reasonable cause to believe that Section 8(b)(4)(D) has been violated, and that there is no agreed-upon method for the voluntary adjustment of the dispute. We accordingly find that the dispute is properly before the Board for determination.

### E. Merits of the Dispute

Section 10(k) requires the Board to make an affirmative award of disputed work after considering various factors. *NLRB v. Electrical Workers IBEW Local 1212 (Columbia Broadcasting)*, 364 U.S. 573, 577 (1961). The Board has held that its determination in a jurisdictional dispute is an act of judgment based on common sense and experience, reached by balancing the factors involved in a particular case. *Machinists Lodge 1743 (J.A. Jones Construction)*, 135 NLRB 1402 (1962).

We have considered the following factors, which we find relevant, and, for the reasons set forth more fully below, we conclude that the Employer's employees represented by Local 3 are entitled to perform the work in dispute.

#### 1. Board certifications and collective-bargaining agreements

Following a 1999 representation election in which both Local 3 and Local 1 participated, the Board certified Local 3 as the exclusive collective-bargaining representative for a unit that includes classifications of employees performing the work in dispute. One of the signatory employers was Knudson Elevator Corp., which later became the Employer.

As a member of the EIA, the Employer has a collective-bargaining agreement that recognizes Local 3 as the certi-

4 DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

fied representative of its employees. The collective-bargaining agreement covers all of the Employer's employees engaged in elevator maintenance and modernization work. Article XVII, the management-rights clause, provides that the Employer may direct employees to perform "all work involving the . . . modernization . . . and . . . installation of elevators . . . (with the exception of a completely new elevator . . . installation using new equipment or used equipment not part of the existing installation) in existing or modified elevator shafts . . . ."

In addition, the duties of the "Grade A Elevator Repair and Modernization Mechanic" include performing work similar to that in dispute:

> Repair, modernize and install elevators, where skilled mechanical work (even to close tolerances) and intricate control circuits are involved. Plan and execute difficult mechanical and electrical repairs and installations such as the renewal of worms and gears, the wiring, connecting and testing of controllers and other auxiliary electrical equipment, machine babbitting, thrust renewals, motor and controller removal and replacement, and modernization.

Local 1 is not certified to represent any of the Employer's employees and does not have a collective-bargaining relationship with the Employer.

Based on the foregoing, the factors of certification and collective-bargaining agreements favor awarding the work in dispute to employees represented by Local 3.

### 2. Employer preference, current assignment, and past practice

The Employer has always used Local 3-represented employees to perform elevator modernization work. Consistent with this past practice, the Employer assigned the Lefrak City work to these employees and prefers that they continue to perform this work. Thus, we find that the factors of employer preference, current assignment, and past practice favor assigning the work to employees represented by Local 3.

### 3. Industry and area practice

We find that the record does not establish a clear or consistent area or industry practice with regard to the work in dispute. At best, the record shows that employees represented by both unions have performed such work. Accordingly, we find that this factor does not favor an award of the work in dispute to employees represented by either union.

### 4. Prior Board cases

The EIA, the Employer, and Local 3 rely on *Elevator Constructors Local 1 (Elevator Industries Assn.)*, 229 NLRB 1200 (1977), in support of their contention that the elevator modernization should be awarded to Local 3-represented employees. In that case, the disputed work involved modernizing nine elevators at the Plaza Hotel by replacing virtually all the component parts. Despite an arbitration decision in favor of Local 1, the Board awarded the work to employees represented by Local 3. We find that the work involved in this dispute is comparable to that involved in the prior Board case. While the case involved a different employer, the same unions were involved and the factual circumstances were very similar.

Local 1 argues that *Elevator Constructors Local 1* is distinguishable because the basis for invoking the Board's 10(k) jurisdiction in this case is a "sham" and the Employer is bound to the arbitration award as an "alter ego." We have already rejected these contentions. Given the close factual parallels between this case and *Elevator Constructors Local 1*, we find that the factor of prior Board decisions favors an award of the disputed work to employees represented by Local 3. See, e.g., *Operating Engineers Local 150 (R&D Thiel)*, 345 NLRB at 1141 (2005), citing *Laborers Local 910 (Brockway Glass)*, 226 NLRB 142, 144–145 (1976).

### 5. Joint Board awards

As previously discussed, an arbitration panel convened pursuant to the New York Plan for resolution of interunion disputes awarded the work in dispute to employees represented by Local 1. The written award indicates that the panel relied on prior New York Green Book decisions. There is no evidence that the panel considered any of the factors that the Board considers in making an award in a 10(k) proceeding. Cf. *Laborers Local 81 (Kenny Construction Co.)*, 338 NLRB 977, 979 (2003) (joint board award does not favor either party absent evidence that it considered 10(k) factors). Furthermore, the Employer is not signatory to the New York Plan and did not participate in the Plan proceedings. "The Board does not give dispositive weight to arbitrator's decisions where the employer is not a party to the proceeding and did not agree to be bound to its results." *Elevator Constructors Local 2 (Kone, Inc.)*, 349 NLRB No. 112 slip op. 7 (2007). We therefore find that the joint board arbitration award does not favor awarding the work in dispute to either group of employees.

### 6. Relative skills

The record shows that the employees represented by both unions are qualified to perform the disputed work. Therefore, this factor does not favor awarding the disputed work to employees represented by either Union.

ELECTRICAL WORKERS LOCAL 3 (UNITEC ELEVATOR CO.)     5

7. Economy and efficiency of operations

The Employer presented testimony that it is more efficient and economical to have Local 3-represented employees perform the work in dispute. The Employer has an experienced crew of employees who have performed similar modernization work for the Employer and are familiar with the Employer's practices, procedures, and policies.

The Employer's modernization manager, Scotko, testified that these employees also perform ancillary functions that would have to be contracted out if the disputed work were reassigned. He testified that the Employer's own Local 3-represented employees do some carpentry, wiring, and electrical work related to the project which, in his experience, Local 1-represented employees do not perform. The Employer also employs a Local 3 member as its truckdriver, avoiding the need to hire anyone to make deliveries or help unload the truck.

The Employer also contends that, if the work is assigned to Local 1, the time and money invested since April in having Local 3-represented employees develop the prototype will be lost. Furthermore, the contract requires the Employer to perform enhanced maintenance in addition to the modernization. Local 1 is not claiming the maintenance work. The Employer's modernization manager testified that the Employer's maintenance mechanics work together with the modernization teams. If additional help is required by a modernization team, a maintenance mechanic can be assigned to assist in performing modernization work. Having that flexibility to assign employees makes it more efficient to have Local 3-represented employees perform both the maintenance and the modernization.

We find that this factor favors awarding the disputed work to the Employer's employees represented by Local 3.

Conclusions

After considering all the relevant factors, we conclude that employees represented by Local 3, International Brotherhood of Electrical Workers, AFL–CIO, are entitled to continue performing the work in dispute. We reach this conclusion relying on the factors of certification and collective-bargaining agreements, current assignment, employer current assignment, preference, and past practice, prior Board case, and economy and efficiency of operations. In making this determination, we award the work to employees represented by Local 3, not to that labor organization or to its members. The determination is limited to the controversy that gave rise to this proceeding.

DETERMINATION OF DISPUTE

The National Labor Relations Board makes the following Determination of Dispute.

Employees of Unitec Elevator Company represented by Local 3, International Brotherhood of Electrical Workers, AFL–CIO, are entitled to perform the elevator modernization work at Lefrak City, New York City, N.Y.

Dated, Washington, D.C. August 15, 2008

---

Peter C. Schaumber,        Chairman

---

Wilma B. Liebman,        Member

(SEAL)     NATIONAL LABOR RELATIONS BOARD